IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:05cv354

| | |
|---|---|
| LARRY SIMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| SNYDER'S OF HANOVER, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the court on defendant's Motion to Dismiss or, in the alternative, to Transfer Venue (#14). Plaintiff has filed a timely Brief in Opposition (#19), to which defendant has filed a timely Reply Brief (#20). Having considered defendant's motion and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

### FINDINGS AND CONCLUSIONS

**I.  Background**

This action concerns a 1999 snack food distribution agreement between plaintiff, a local distributor, and defendant, a snack food manufacturer with its principle place of business in Pennsylvania. Plaintiff contends that, beginning in March 2005, defendant breached such agreement when it attempted to force him into signing a new contract with a separate corporate entity that is wholly owned by defendant. Complaint, at ¶ 8. After refusing to sign such new contract, plaintiff contends that defendant began accusing him of not properly performing his duties as a route distributor, Complaint, at ¶ 9, and ultimately terminated such distributorship agreement on April 14, 2005. Complaint, at ¶ 10. After termination, plaintiff contends that he had a contractual right to be compensated for the value

1

of the route. Complaint, at ¶ 12. In addition, plaintiff contends that defendant engaged in a course of conduct aimed at reducing plaintiff's profits on products he sold, including splitting his route and giving a portion of such route to another person without notice or compensation, all aimed at forcing him out of business so as to reacquire rights to the route without just compensation. Complaint, at ¶¶ 14-16. Based on such allegations, plaintiff has asserted two causes of action, the first for breach of contract and the second for unfair and deceptive trade practices under Chapter 75-1.1 of the North Carolina General Statutes.

## II. Procedural History

Plaintiff filed the instant action in the North Carolina General Court of Justice, Superior Court Division, for Henderson County, on a date not disclosed by the pleadings.[1] On December 7, 2005, defendant timely removed this action to this court in accordance with 28, United States Code, Section 1441, based on diversity jurisdiction under 28, United States Code, Section 1332. Plaintiff has not moved to remand this action, and the undersigned finds that such removal was proper and that the diversity jurisdiction of this court has been properly invoked inasmuch as it appears from the pleadings that the controversy is between residents of different states and that the amount in controversy well exceeds the jurisdictional threshold of at least $75,000.00. 28 U.S.C. § 1332.

## III. Motion to Dismiss and in the Alternative to Transfer Venue to the Middle District of Pennsylvania

### A. Nature of the Motions

Defendant has moved to dismiss this action for improper venue or to transfer this action to the United States Court for the Middle District of Pennsylvania, where defendant

---

[1] The file stamp on the copy of the Complaint annexed to the Notice of Removal is unreadable and appears to be a copy of a fax. Because the clock on removal begins from service of the Complaint, defendant did not allege in its removal papers the actual date the Complaint was filed. See Docket Entry 1, Ex. A.

maintains its corporate offices. Defendant bases its motion on venue and choice of laws provisions contained within the "Articles of Agreement," hereinafter referred to as "the contract." In the contract, in Article 25, entitled "Miscellaneous," the following is found:

> Choice of Form. THE PARTIES AGREE THAT TO THE EXTENT ANY DISPUTES ARISE THAT CANNOT BE RESOLVED DIRECTLY BETWEEN THEM, THE DISTRIBUTOR SHALL FILE ANY SUIT AGAINST SNYDER'S ONLY IN THE FEDERAL OR STATE COURT HAVING JURISDICTION WHERE SNYDER'S PRINCIPAL OFFICE IS THEN LOCATED. SNYDER'S MAY FILE SUIT IN THE FEDERAL OR STATE COURT IN THE JURISDICTION WHERE SNYDER'S PRINCIPAL OFFICE IS LOCATED OR IN THE JURISDICTION WHERE THE DISTRIBUTOR RESIDES OR DOES BUSINESS OR WHERE THE CLAIM AROSE. DISTRIBUTOR IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT AND WAIVES ANY OBJECTION HE MAY HAVE TO EITHER THE JURISDICTION OR VENUE OF ANY SUCH COURT.

Complaint, Exhibit A (emphasis and errors in the original). Plaintiff has challenged defendant's reliance on such provisions, arguing that the contract was a contract-of-adhesion and that he should not be bound by such unbargained-for obligations, as shown by plaintiff's own affidavit. Defendant has replied, arguing that the parol evidence rule prohibits consideration of evidence outside the four corners of the contract and that even if the affidavit was considered it is clear that plaintiff not only requested such contract, but, as a business professional, bargained for and attained substantial monetary concessions from defendant.

### B. Discussion of Defendant's Motions

#### 1. Motion to Dismiss under Rule 12(b)(3) and Section 1406(a)

Defendant has moved to dismiss this action for improper venue under Rule 12(b)(3),

Federal Rules of Civil Procedure, and under 28, United States Code, Section 1406(a).[2]

In deciding any motion to dismiss, "all inferences must be drawn in favor of the plaintiff, and the facts must be viewed as the plaintiff most strongly can plead them." Sun Dun, Inc. of Washington v. Coca-Cola Co., 740 F.Supp. 381, 385 (D.Md.1990)(citation and corresponding quotation marks deleted). In reviewing defendant's motion, the court has done just that and has viewed the facts as alleged in a light most favorable to plaintiff.

Regardless of how the facts are viewed, it would appear that neither basis for dismissal is appropriate. Neither party has cited or briefed the court on the impact of two recent, published decisions that have issued from sister courts in the Fourth Circuit: Three M Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc., 368 F.Supp.2d 450, 455-56 (D.Md. 2005); and Godfredson v. JBC Legal Group, P.C., 387 F.Supp.2d 543, 556 (E.D.N.C.2005).

In this case, defendant contends that the Western District of North Carolina - - the court to which defendant removed this action - - is an improper venue to hear this action inasmuch as the contract between parties contains a forum selection clause requiring plaintiff to litigate in a federal or state court situate in the Middle District of Pennsylvania. As shown below, application of the reasoning in Three M Enterprises, Inc. and Godfredson requires denial of both of defendant's motions as a matter of law.

Venue of an action that is originally filed in this court is controlled by 28, United States Code, Section 1391(a). Godfredson v. JBC Legal Group, P.C., supra, at 547. As to actions originally filed in this court, Section 1391(a) provides, as follows;

---

[2] The court notes that defendant's Motion to Dismiss is nine pages long and contains extensive legal arguments and that defendant filed simultaneously a 22 page Brief in Support, covering the same ground. Such method of pleading has caused unnecessary confusion and is violative of the 25 page limit. The better method would have been to simply file a motion to dismiss setting forth the relief sought, and support such motion with a memorandum of law.

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Because this action was not originally filed in this court, Section 1391(a) has absolutely no application.

Venue of an action, such as this, that is removed to a federal court from a state court based on diversity jurisdiction is governed by the venue provisions of 28, United States Code, Section 1441(a). Godfredson v. JBC Legal Group, P.C., supra, at 547; see also Three M Enterprises, Inc. v. Texas D.A.R. Enterprises, Inc., supra, at 455-56. Section 1441(a) provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, *to the district court embracing the place where such action is pending.*" Id. (emphasis added). The district court in Three M Enterprises, Inc. explained the subtle difference between the two statutes:

> By requiring removal to the district court for the district in which the state action is pending, Section 1441(a) "properly fixes the federal venue in that district." *Hollis v. Florida State University,* 259 F.3d 1295, 1300 (11th Cir.2001). Indeed, courts have recognized that Section 1441(a) establishes federal venue in the district where the state action was pending "as a matter of law," even if venue would be "improper under state law when the action was originally filed." *See Hollis,* 259 F.3d at 1300 (citing *Serrano v. United States Fire Ins. Co.,* No. EP-00-CA-255-DB, 2000 WL 33348220, *1-2 (W.D.Tex. Nov. 7, 2000); *Bacik v. Peek,* 888 F.Supp. 1405, 1413 (N.D.Ohio 1993); and R. Givens, 1 Manual of Federal Practice § 2.28 (5th ed.1998)).

Id., at 454 (footnote omitted). The district court in Three M Enterprises, Inc. went on to note that while Section 1441(a) does not give "a removing defendant a choice of districts to which to remove, and that it would not be entirely accurate to characterize removal as the voluntary relinquishment of a legal right," it is "the fact that the removal statute establishes venue as a matter of law

5

[that] precludes Defendants' instant Motion to Dismiss or transfer the action based on improper venue." Id., at fn. 4 (citation and corresponding quotation marks deleted; emphasis added). See also Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531 (6th Cir. 2002)(venue in a case removed from state court is governed solely by § 1441(a), requiring denial of motion to dismiss or transfer venue under Section 1406(a)). Chief Judge Flanagan in the Eastern District of North Carolina wrote in Godfredson, as follows:

> Although defendants' reasoning is unassailable, their argument nonetheless suffers from a fatal flaw: 28 U.S.C. § 1391 does not apply when, as here, defendants remove a case to federal court from state court.

Godfredson v. JBC Legal Group, P.C., supra, at 555. The district court went on to explain that

> Venue for a removed action is fixed . . .by the removal statute, 28 U.S.C. § 1441(a), which limits venue to "the district court of the United States for the district and division embracing the place where such action is pending." *See id.*; 28 U.S.C. § 1441(a). Because § 1441(a) only allows one possible venue for removal, "once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds."

Id., at 555 -56 (citation omitted). Instead, venue must be considered under 1441(a).

Under the second part of the motion, defendant cites Section 1406(a) as a grounds for dismissal of the action. Section 1406(a) provides, as follows:

> [t]he district court of a district in which is filed a case *laying venue in the wrong division or district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a)(emphasis added). For cause, defendant cites the court to a forum selection clause contained in the contract.³ As discussed above, plaintiff has attempted to

---

³ Forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." The Bremen v. Zapata Off-Shore, Co., 407 U.S. 1, 10 (1972). Since venue selection agreements are mandatory, federal courts will enforce them unless "enforcement would be unreasonable and unjust, or ... the clause [is] invalid for such

show by way of affidavit that such clause was not bargained for and should not be considered, and defendant has replied to plaintiff's response and argued that plaintiff's affidavit would be precluded by the parol evidence rule, and even if it was not, that the affidavit provides *indicia* that the contract was entered into at arms length inasmuch as plaintiff bargained for and received a substantial benefit.

Despite the outstanding briefing by the parties, it nonetheless appears to the undersigned that the same cases that eviscerate defendant's Rule 12(b)(3) Motion to Dismiss based on improper venue also require denial of defendant's Section 1406(a) Motion to Dismiss, which is also based on improper venue. Under the venue provisions of Section 1441, and the case law cited, the Western District of North Carolina is the *proper* venue for the instant action as a matter of law. Where, as here,

> a district court is the appropriate forum for venue purposes under Section 1441, then a subsequent transfer to another federal district court must be based upon Section 1404(a) rather than on Section 1406(a) ....

See 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3726, at 123 (3d ed. 1998 & Supp.2005) (citations omitted).

It appearing as a matter of law that the Asheville Division of the Western District of North Carolina is neither the wrong division nor district as a matter of law, the undersigned must recommend that defendant's Rule 12(b)(3) Motion to Dismiss and Section 1406(a) Motion to Dismiss be denied.

### 2. Alternative Motion to Transfer Venue Based on Section 1404(a)

The undersigned has considered the only appropriate provision under which defendant could seek transfer, which is Section 1404(a). "[A] defendant in a removed action, if it

---

reasons as fraud or overreaching." Id., at 15.

believes that the case can be better litigated or tried in another court, has the option of seeking transfer pursuant to 28 U.S.C. § 1404(a)." Godfredson v. JBC Legal Group, P.C., supra, at 556 (citation omitted). Section 1404(a) provides, as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

In Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F. Supp. 93 (W.D.N.C. 1990), this court established a litany of considerations applicable to any motion to transfer made under 28, United States Code, Section 1404(a). In order to determine whether transfer is proper, a balance must be struck between the competing interests. Unless the balance is tipped strongly in favor of the moving party, Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984), plaintiffs' choice of forum should not be disturbed. Upon a motion to transfer, the moving party carries the burden, 1A Moore's Federal Practice, paragraph 0.345[5] at 4360 (Matthew Bender 1990); and the burden is heavy, Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F. Supp. 446, 451 (W.D.N.C. 1989).

> A defendant carries a particularly heavy burden when it moves pursuant to [Section] 1404(a) to transfer an action from a district where venue is proper. As this court has noted previously, it is "black letter law," that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed."

Phillips v. S. Gumpert Co., Inc., 627 F. Supp. 725, 726-27 (W.D.N.C. 1986) (citations omitted) (quoting Western Steer Mom 'N' Pop's v. FMT Invs., Inc., supra, at 265). The relevant considerations are, as follows:

    1.    The plaintiff's initial choice of forum;

    2.    The residence of the parties;

    3.    The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view;

6. The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

Id. at 7-8. Courts should make both a quantitative and a qualitative analysis of the factors. McDevitt & Street Co. v. Fidelity and Deposit Co., 737 F. Supp. 351, 354 (W.D.N.C. 1990).

The Supreme Court clearly addressed the impact of a forum selection clause on such analysis. In Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988), the Supreme Court held, as follows:

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964). A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. **The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus**. In its resolution of the § 1404(a) motion in this case, for example, the District Court will be called on to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences.

Id., at 29-30 (emphasis added). Based on the reasoning of Stewart, the presence of a forum-

selection clause requires consideration of the convenience of the proposed forum and the fairness of transfer in light of the forum selection clause, Id., making such a provision a significant factor in the eleven-step analysis.

From the outset, plaintiff argues that the court should not consider the forum selection clause because it was not agreed to by plaintiff through arms length negotiation. The Court in Stewart also provides guidance on this issue:

> we disagree with the court's articulation of the relevant inquiry as "whether the forum selection clause in this case is unenforceable under the standards set forth in *The Bremen*." 810 F.2d, at 1069. Rather, the first question for consideration should have been whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue and transfer this case to a Manhattan court.

Id. While plaintiff argues that the court should not even consider the forum selection clause as it is violative of North Carolina law, it would appear based on Stewart that the agreement should be integrated into the court's weighing of considerations as required by Congress under Section 1404(a), because "the instructions of Congress are supreme." Id., at 30.

Prior to conducting such review, it is necessary for the undersigned to determine whether the forum-selection clause is valid. In concurring in full with the opinion of the majority in Stewart, Justices Kennedy and O'Connor opined, as follows:

> enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. Although our opinion in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972), involved a Federal District Court sitting in admiralty, its reasoning applies with much force to federal courts sitting in diversity. The justifications we noted in The Bremen to counter the historical disfavor forum-selection clauses had received in American courts, id., at 9, 92 S.Ct., at 1912, should be understood to guide the District Court's analysis under § 1404(a).
> 
> The federal judicial system has a strong interest in the correct resolution of these questions, not only to spare litigants unnecessary costs but also to relieve courts of time-consuming pretrial motions. Courts should announce and encourage rules that support private parties who negotiate such clauses. Though state policies should be weighed in the balance, the authority and prerogative of the federal courts to determine the issue, as Congress has

> directed by § 1404(a), should be exercised so that a valid forum-selection clause is given controlling weight in all but the most exceptional cases.

Id., at 33. As early as 1972, the decision of the Court in The Bremen provided that "in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). Even if the court were to fully credit all allegations in the affidavit of plaintiff, it appears that it is only suggested that the forum-selection clause was not bargained for, and that there is not a "strong showing that it should be set aside." Id. Indeed, as defendant's reply points out, plaintiff is an experienced business person who convinced defendant to place its oral distributorship relationship with him into a written contract, and negotiated with defendant to avoid payment of what amounts to a franchise fee for the route. This simply does not appear to be one of the "exceptional cases" discussed by Justices Kennedy and O'Connor in Stewart.

With those issues in mind, the undersigned will conduct the required review:

  a. **The plaintiff's initial choice of forum.**

In this case, plaintiff clearly desires to litigate this matter in the Western District of North Carolina. While assigning this choice great weight, the undersigned has also considered this choice of forum in light of the forum-selection provision contained in the contract. Inasmuch as such "initial choice of forum" came subsequent to an agreement requiring plaintiff to litigate this matter in Pennsylvania, which is not subject to being set aside, the undersigned will give this choice of forum diminished weight, finding that such factor is neutral.

  b. **The residence of the parties.**

This factor is unaffected by the choice of forum provision. Plaintiff resides in this district and defendant appears to be a corporate resident of Pennsylvania. This factor is

neutral.

        **c.**        **The relative ease of access of proof**.

This factor is unaffected by the choice of forum provision. Plaintiff's action is for breach of contract and unfair and deceptive trade practices. Defendant is apparently contending that plaintiff did not perform as required under the contract and plaintiff is contending that he did. While there will most certainly be a number of witnesses from Pennsylvania as well as documents, proof concerning plaintiff's performance would more likely be found in the records and in the testimony of those persons who manage the various food outlets plaintiff serviced, all of which were within this district. This factor favors retention.

        **d.**        **The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses.**

In the event of transfer, under Rule 45 it would appear that the witnesses located within this district would be outside the subpoena power of the Pennsylvania district court for trial, but that such witnesses could be subpoenaed for depositions within this district through process issued by this court. In the event any witnesses located in this district were unwilling to attend trial in Pennsylvania, such deposition testimony could be admissible as that of an unavailable witness. If, however, this matter were kept here, it would appear that there would be little concern as to compulsory process inasmuch as many of the Pennsylvania witnesses would likely be employees or agents of the defendant.

Regardless of where this action is tried, there will be substantial costs to both sides for travel to and from both North Carolina and Pennsylvania. Inasmuch as plaintiff will likely have the bulk of witnesses (store managers concerning his efforts in selling and stocking defendant's products), and it appearing that those witnesses are located in North

Carolina, it is likely that defendant will incur the bulk of travel costs. Further, defendant has argued that such costs were foreseeable by plaintiff and that this action mainly concerns calculation of damages owed, requiring neither a substantial number of witnesses nor documents.

The choice of forum provision does impact consideration of this factor. In <u>AC Controls Co., Inc. v. Pomeroy Computer Resources, Inc.</u>, 284 F.Supp.2d 357 (W.D.N.C. 2003), this court found that in every diversity action, one side or the other will inevitably be burdened, and that such burden was foreseeable when the parties negotiated the contract containing the forum selection clause. <u>Id.</u>, at 362. While this factor appears initially neutral at best, this factor favors transfer to the Middle District of Pennsylvania when considered in light of the forum-selection clause.

> **e.** **The possibility of a view.**

This factor is neutral in that there is nothing tangible to view.

> **f.** **The enforceability of a judgment, if obtained.**

This factor is also neutral inasmuch as a judgment obtained in a federal court in Pennsylvania is - - as is a judgment obtained in this court - - enforceable nationwide.

> **g.** **The relative advantages and obstacles to a fair trial.**

This factor is neutral in that a fair trial can be obtained in any federal court for either side.

> **h.** **Other practical problems that make a trial easy, expeditious, and inexpensive.**

There appear to be no other practical problems outside of the factors previously considered that make trial any easier here than in Pennsylvania. This factor is neutral.

> **i.** **The administrative difficulties of court congestion.**

There appears to be no significant difference in court congestion. In fact, the Middle

District of Pennsylvania is most likely run with similar efficiency to this court inasmuch as the Clerk of this Court was recruited from the Middle District of Pennsylvania.. This factor is neutral.

> **j.** **The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action**.

In addition to a forum selection clause, there is also a clause concerning choice of laws. In this case, plaintiff and defendant agreed at the time the contract was entered into that Pennsylvania law would govern. Complaint, Exhibit A, at Article 25, ¶ J. While there is interest in having plaintiff's dispute resolved in this community, the overriding localized interest would be in Pennsylvania inasmuch as that appears to be the locus of defendant's business and the place from which it likely contracts with many route salesmen for sale of its products nationwide. Clearly, the Pennsylvania courts would be more at home with Pennsylvania law governing contracts. This factor favors transfer.

> **k.** **The avoidance of unnecessary problems with conflict of laws.**

This factor is neutralized through the choice of laws provisions.

* * *

Having considered all of the factors individually, the undersigned will now consider all the factors cumulatively. Both quantitatively and qualitatively, the factors weigh in favor of transfer to the Middle District of Pennsylvania. When the parties' expressed preference for that venue is considered, it appears to the undersigned that this court should honor that contractual preference and transfer this matter to the Middle District of Pennsylvania. While plaintiff has argued that he was presented with a take-it-or-leave-it contract, and was in an inferior bargaining position, it appears that he is no newcomer to the world of business and in fact successfully negotiated terms that were favorable to his business.

> It is a commonplace that parties accept unfavorable terms in exchange for desirable outcomes. Defendants do not argue that Fidelcor manipulated the circumstances which resulted in this agreement, nor can they contend that the forum-selection clause itself is unreasonable or unjust. What we have here, is the unremarkable story of a borrower in a weak bargaining position agreeing to a common, albeit displeasing, term. Other than defendants' conclusory allegations, there is no evidence of duress, fraud, or even unfairness.

CIT Group/Credit Finance Inc. v. Lott, 1993 WL 157617, *2 (N.D.Ill. 1993). Nor can it be said that such provisions are anything new in contracts, because forum-selection "provisions such as the one at issue here are commonplace. . . ." 2215 Fifth Street Associates v. U Haul Intern., Inc., 148 F.Supp.2d 50, 58 (D.D.C. 2001). In this case, plaintiff sought to distribute locally a nationally known brand, and his own affidavit reveals that he had successfully distributed another nationally known brand immediately before distributing plaintiff's products. It is neither unreasonable nor unfair to expect to be required to litigate a dispute over that contract in the home state of the nationally known brand as part of the give and take in bargaining for a contract that supposedly provided plaintiff with an exclusive route within which to sell that product. In fact, the only matter that would be surprising is if a nationally known brand *actually agreed* to be sued locally by its own franchisees, vendors, licensees, or route salesmen in the various jurisdictions throughout the United States.

### C. Conclusion

Having considered the well-reasoned briefs of respective counsel, as well as reviewed current case law, the undersigned will recommend that defendant's Motion to Dismiss be denied, and that defendant's alternative Motion to Transfer Venue under Section 1404(a) be allowed.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's

(1)     Motion to Dismiss (#14) be **DENIED**; and

(2)     Alternative Motion to Transfer Venue under Section 1404(a) (#14) be **ALLOWED**, and that this matter be transferred to the United States District Court for the Middle District of Pennsylvania for disposition.


The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).


Signed: March 30, 2006

Dennis L. Howell
United States Magistrate Judge